# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOSEPH J. VALENCIA,

      Plaintiff,

vs.                                                   Civil No. 00-0504 JP/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,[1]

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed September 1, 2000 **[docket # 9]**.[2] The Commissioner denied Plaintiff's request for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. Plaintiff is currently age 48 and alleges a disability which commenced March 1, 1995 due to diabetes, degenerative disc disease, and venous insufficiency. He worked previously as a bellhop, and in delivery and sales.

    2. After conducting an administrative hearing, the Commissioner's Administrative Law

---

[1] William A. Halter became the Acting Commissioner of Social Security on January 20, 2001. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure [Rule 43(c)(2) of the Federal Rules of Appellate Procedure]. William A. Halter should be substituted, therefore, for Commissioner Kenneth S. Apfel as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The motion package was actually filed with the Court on November 6, 2000.

Judge ("ALJ") denied the applications, concluding that Plaintiff has a residual functional capacity for sedentary work. The Appeals Council denied Mr. Valencia's request for review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff alleges that the ALJ erred in his residual function capacity ("RFC") finding in that the finding is not related to the evidence in the record and also that the decision contains no clear and convincing reasons for the ALJ's credibility finding.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. § 423 (d)(1)(A)); § 1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. Plaintiff injured his back while working at Isleta Bingo Palace in 1993 when he lifted a box weighing about 70 pounds. He has not worked since about six months following the injury. He complains of low back pain that is "always there." Tr. at 169. Three months before the

hearing, he started getting left leg pain due to "blood clots." Tr. at 176.[3]  Mr. Valencia told the ALJ that he gets little or no relief from the medications he was taking at the time, which are: Tylenol, Advil, methocarbamol (muscle relaxant), and amitriptyline, Tr. at 171, but that he did get about 40% relief by lying down on his side with his legs elevated.  Tr. at 170.

      7.  Mr. Valencia stated that he gets about five hours of sleep a day (4 hours at night, and one usually during the day). Tr. at 174.  He can sit for one hour before he needs to lie down. Tr. at 193.  Plaintiff told the ALJ that he would not be able to work at a job even if it allowed him to put his feet up ten minutes every hour because his back would start to "stiffen up." Tr. at 193.  He also said that his back "slips" without warning at times, keeping him bedridden for 3 to 4 days, and taking about 7 to 8 days for his back to "come back into place." Tr. at 201.

**Residual Functional Capacity**

      8.  Plaintiff alleges that the ALJ erred in his residual function capacity ("RFC") finding in that the finding is not related to the evidence in the record.  I agree.  The ALJ relied on the grids to determine that Plaintiff could perform a full range of sedentary work.  This finding is not supported by the medical evidence.  The ALJ accurately recited the medical reports, Tr. at 17-18, but his decision is not based upon this evidence

      9.  Dr. Livingston, D.O., Plaintiff's treating physician, opined that Plaintiff was disabled and "unable to work."  Although the Commissioner, and not a physician, is responsible for determining whether a claimant meets the statutory definition of disability, see 20 C.F.R. § 404.1527(e)(1), Dr. Livingston's assessment indicates that Plaintiff had severe problems that

---

[3] Plaintiff's diabetes is controlled by medication, thus it is not raised as an issue, although the impairment may have an effect on Plaintiff's functional limitation that is raised in the briefs, i.e., the need to elevate legs at frequent intervals throughout the day.

might affect his ability to perform a full range of sedentary work. He recommended that Plaintiff use stockinettes at all times, avoid prolonged standing, do back exercises and elevate his feet for at least 10 minutes out of each hour. Tr. at 117. In a letter dated July 15, 1997, Dr. Livingston stated that Plaintiff's condition was "chronic and not expected to improve." Tr. at 112.

10.   Dr. G.T. Davis, a consultative examiner, opined in a report dated November 1997 that Plaintiff's diabetic neuropathy and poor circulation "may limit prolonged standing and walking. . . ." Tr. at 138. He also noted that Plaintiff "may have some limitation due to his back condition. . . ." Id.

11.   Sedentary work involves lifting no more than ten pounds at a time, no more than two hours of walking and standing a day, and a total of six hours of sitting a day. SSR 83-10; 20 C.F.R. § 404.1567(a). Dr. Livingston's recommendation concerning frequent leg elevation throughout the day, as well as Dr. Davis' comments concerning Plaintiff's functional limitations, precludes a finding that Mr. Valencia could perform a full range of sedentary work. According to the RFC assessment Dr. Livingston completed, Plaintiff could sit for only 4 to 5 hours total with interruption, and one-half hour without interruption. Tr. at 135.

12.   To be placed at a particular level of residual functional capacity, a claimant "must be able to perform the full range of such work on a daily basis." Frey v. Bowen, 816 F.2d 508, 512 (10th Cir. 1987). Thus, the ALJ erred by relying on the grids where Plaintiff needed to change positions frequently. See Frey v. Bowen, 816 F.2d 508. (existence of non-exertional impairment precludes use of the grids). Further, a vocational expert should have been consulted. See Ragland v. Shalala, 992 F.2d 1056, 1059 (10th Cir. 1993) (where a claimant cannot sit or stand for prolonged periods of time, the ALJ must consult a vocational expert before making a

determination).

13. In September 1996, Dr. Livingston referred Plaintiff to Dr. Castillo, an orthopedic specialist. Dr. Castillo noted that Mr. Valencia was applying for disability benefits and food stamps at the time, and was intending to apply to reinstate workers' compensation. Tr. at 128. He also reports Plaintiff as saying that he decided to quit working because "his wife had a good job, and he decided to merely stay at home and 'take it easy.'" Tr. at 127. During the physical examination, Dr. Castillo obtained inconsistent results, particularly when Plaintiff was distracted, which contributed to the doctor's finding that there was considerable symptom magnification. Tr. at 129.[4]

14. As a consulting physician, Dr. Castillo's remarks are accorded less weight than those of Dr. Livingston, a treating physician. See Reid v. Chater, 71 F.3d 372 (10th Cir. 1995) (treating physician's opinion generally is favored over that of a consulting physician). Nor does the ALJ's decision furnish any basis for not doing so. However, Dr. Castillo's remarks concerning symptom magnification are relevant to a credibility inquiry, to be addressed next.

**Credibility Determination**

15. Plaintiff alleges that the ALJ's decision did not contain clear and convincing reasons for a noncredibility finding. The ALJ is required to make specific findings and state his reasons for disbelieving evidence or testimony supporting his belief. See Claassen v. Heckler, 600 F.Supp. 1507 (D.Kan. 1985). Where an ALJ gives no particular reasons for discounting the claimant's credibility, a court may feel free to view the ALJ's conclusion with "a skeptical eye."

---

[4] Plaintiff argues that the result of the Waddell's testing was inappropriately used as a basis for the finding of symptom magnification, but Dr. Castillo's report makes it clear that it was based on inconsistent findings on physical exam as well.

5

Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir.1983).

16. In this case, the credibility finding seems to be implicit in the basis for the ALJ's conclusion regarding Plaintiff's RFC, which I have already found not to be based on substantial evidence.

17. Dr. Castillo's remarks mentioned above may provide a basis for a finding of noncredibility. The record contains Plaintiff's testimony and medical reports concerning Mr. Valencia's need to elevate his legs; episodes when his back "slips" so that he is bedridden for several days; and then of course, Plaintiff's testimony of disabling back pain.[5] However, even though there may be evidence to support a finding of malingering, it is unclear what subjective testimony was discounted by the ALJ.

18. While a finding of noncredibility does not compel a finding of not disabled, Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993), pain must be considered in evaluating residual functional capacity. 20 C.F.R. §§404.1545 & 416.945; S.S.R. 96-8p. Thus, because a finding of noncredibility regarding pain symptoms will have an impact on an RFC determination, remand is necessary not only to conduct a proper credibility inquiry, but to conduct another RFC inquiry as well.

19. In sum, I find that the ALJ erred in his residual function capacity ("RFC") finding in that the finding is not related to the evidence in the record and also that the decision contains no clear and convincing reasons for the ALJ's credibility finding. The case should be remanded so that the ALJ can conduct a proper credibility finding, making specific and express findings

---

[5] The ALJ spent considerable time discussing the effects of Plaintiff's diabetes on his legs and feet. E.g., Tr. at 191-92.

regarding what testimony is discounted, and so that a residual functional capacity assessment can be completed.  A vocational expert should be consulted at step five.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 9]** be GRANTED and that it be remanded in order for the ALJ to make a proper credibility finding, making specific and express findings regarding what testimony is discounted, and to complete a residual functional capacity assessment.  A vocational expert should be consulted at step five. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE